IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL HACKLER,<br><br>      Plaintiff,<br><br>  v.<br><br>BERKELEY BOWL PRODUCE, INC.; BERKELEY BOWL MARKETPLACE; and LARRY EVANS,<br><br>      Defendants.<br>_____/ | No. 10-01877 CW<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEYS' FEES<br>(Docket No. 11) |

    Plaintiff Carol Hackler alleges that Defendants Berkeley Bowl Produce, Inc., et al., engaged in unlawful employment practices in violation of the California Fair Employment and Housing Act (FEHA) and the California Family Rights Act (CFRA).  She moves to remand her case to state court and seeks attorneys' fees.  Defendants oppose the motion.  The motion was taken under submission on the papers.  Having considered the papers submitted by the parties, the Court GRANTS Plaintiff's motion to remand and DENIES her request for attorneys' fees.

BACKGROUND

    Plaintiff is a disabled female over the age of 40.  She has filed "a number of charges" of discrimination with the California Department of Fair Employment and Housing (DFEH) based on conduct

she allegedly suffered as an employee of Berkeley Bowl. Compl. ¶ 12. She contends that, after she filed one such charge, she "was encouraged to sign a settlement agreement . . . that was never explained to her, contains improper terms, is ambiguous, and otherwise not a legally binding contract." Id. ¶ 21.

Plaintiff pleads eleven claims against all Defendants: (1) a FEHA claim for sex- and disability-based discrimination; (2) a FEHA claim for sex- and disability-based harassment; (3) a FEHA claim for retaliation; (4) a FEHA claim for a failure to accommodate her disability; (5) a FEHA claim for a failure to engage in a "good faith interactive process;" (6) a FEHA claim for a failure to prevent discrimination; (7) a claim for violation of the CFRA, Cal. Gov't Code § 12945.2; (8) intentional infliction of emotional distress; (9) defamation; (10) wrongful termination in violation of public policy; and (11) declaratory and injunctive relief concerning her settlement agreement with Defendants.

Plaintiff initiated her action in Alameda County Superior Court on November 20, 2009. On March 31, 2010, she served Defendants with process and her complaint. On April 29, 2010 Defendants answered her complaint and, one day later, removed her action to federal court.

LEGAL STANDARD

At any time before judgment, if it appears that the district court lacks subject matter jurisdiction over a case previously removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). On a motion to remand, the scope of the removal statute must be strictly construed. See Gaus v. Miles, Inc., 980 F.2d 564,

2

566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (internal citation omitted). Courts should resolve doubts as to removability in favor of remanding the case to state court. Id.

## DISCUSSION

Defendants assert that the Court has federal question jurisdiction over this case. They argue that § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), preempts all of Plaintiff's claims because the claims necessarily require the interpretation of the collective bargaining agreement (CBA) to which she was a party.

Generally, "the well-pleaded complaint rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation and internal quotation marks omitted). An exception to this rule is the "complete preemption" doctrine. Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1107 (9th Cir. 2000). This "doctrine is actually a doctrine of jurisdiction and is not to be confused with ordinary preemption doctrine (although it is related to preemption law)." Id. Under the doctrine, the "preemptive force" of certain statutes is recognized as being "so strong that they 'completely preempt' an area of state law" such that "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim . . . ." Id.

3

1    Section 301(a), which has been deemed to have such an effect,
2 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). As explained by the Ninth Circuit,

> Although the language of § 301 is limited to "[s]uits for violation of contracts," courts have concluded that, in order to give the proper range to § 301's policies of promoting arbitration and the uniform interpretation of collective bargaining agreement provisions, § 301 "complete preemption" must be construed to cover "most state-law actions that require interpretation of labor agreements."

Balcorta, 208 F.3d at 1108.

"A state law claim is completely preempted by the LMRA when it 'necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute.'" Dahl v. Rosenfeld, 316 F.3d 1074, 1077 (9th Cir. 2003) (quoting Cramer v. Consol. Freightways Inc., 255 F.3d 683, 693 (9th Cir. 2001)). Courts must narrowly construe the term "interpret." Balcorta, 208 F.3d at 1108. "A 'reference to or consideration of terms of a collective bargaining agreement is not the equivalent of interpreting the meaning of the terms.'" Detabali v. St. Luke's Hosp., 482 F.3d 1199, 1203 (9th Cir. 2007) (quoting Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 749 (9th Cir. 1993)).

Plaintiff's complaint does not provide a basis for federal question jurisdiction. She pleads claims for unlawful employment

4

practices and torts related thereto. The only factual allegations related to her claims provide that she was retaliated against for complaining about disparate treatment and other violations of state law. These claims and allegations, on their own, do not require interpretation of the CBA. See, e.g., Detabali, 482 F.3d at 1203 ("FEHA employment discrimination claims are not ipso facto preempted by § 301 of the LMRA."). Resolving all doubts against Defendants, the Court finds that Plaintiff's pleadings do not justify removal.

Noting that Plaintiff's complaint provides little insight into the nature of her action, Defendants turn to allegations contained in her DFEH charges, filed before the inception of her lawsuit, to assert that interpretation of the CBA is necessary. Although Plaintiff does not deny that her lawsuit includes conduct plead in her administrative complaints, it does not follow that she currently seeks relief for all the acts alleged in them. Indeed, Defendants point to no controlling authority indicating that consideration of such pre-lawsuit documents is permissible; generally, a court's analysis on the propriety of removal is limited to a plaintiff's initial pleading or "other paper" served on a defendant after the commencement of the lawsuit. See 28 U.S.C. § 1446(b); Lowery v. Ala. Power Co., 483 F.3d 1184, 1213 (11th Cir. 2007) ("[U]nder § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff -- be it the initial complaint or a later received paper -- and determines whether that document and the notice of removal unambiguously establish federal jurisdiction.");

see also Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002) (stating that settlement letter could satisfy amount-in-controversy requirement for diversity jurisdiction). Nevertheless, even if her current lawsuit were co-extensive with her DFEH charges, it is not evident that an interpretation of the CBA would be required.

Defendants argue that Plaintiff's claims for discrimination and failure to accommodate are premised on their decision not to assign her to another position. Thus, they assert, the Court must interpret the meaning of Article 21 of the CBA,[1] which concerns promotions and transfers. However, the limited record does not show that such an interpretation is necessary. Article 21 outlines when an employee may be promoted "to lead positions" or transferred "to vacant positions." Notice of Removal, Ex. C ¶ 21.0. Plaintiff does not assert that Defendants failed to accommodate her in violation of this provision. Article 21 does not even appear relevant to Plaintiff's claims; it offers no insight on how Defendants are to provide accommodations for disabled employees. Although a court may need to consider the terms contained in Article 21 to adjudicate Plaintiff's claims, its interpretation is not necessarily required.

Defendants also argue that Article 30 of the CBA, a general non-discrimination provision, must be interpreted. This argument was rejected in Ackerman v. Western Electric Co., Inc., 860 F.2d

---

[1] Defendants refer to Article 26, which concerns meal and rest periods. Because they discuss provisions regarding transfers, the Court understands them to intend to cite Article 21.

6

1514 (9th Cir. 1988). There, a defendant argued that a CBA's general non-discrimination provision required interpretation because it was "inextricably intertwined" with a plaintiff's claim for disability discrimination. Id. at 1517. The court disagreed, stating,

> California's statute confers upon employees certain rights not to be discriminated against because of physical handicap or medical condition. That right is defined and enforced under state law without reference to the terms of any collective bargaining agreement. Ackerman's state-law claim is consequently independent of the agreement. That she might also have separate remedies under the bargaining agreement makes no difference.

Id. Here, Plaintiff seeks relief under the FEHA, not the CBA; consequently, her claims can be resolved without interpreting Article 30. This obviates any need to analyze Defendants' so-called "interplay" between Articles 21 and 30. Opp'n at 9.

Defendants next contend that providing Plaintiff with an accommodation could be prohibited by Article 33, which proscribes individual contracts "concerning wages, hours of work and/or working conditions that provides less benefits than the terms of" the CBA. Notice of Removal, Ex. C ¶ 33.1. The current record does not indicate that such an individual contract was necessary to accommodate Plaintiff's purported disability. Even if it did, there is no reason to believe that Article 33 requires interpretation.

With respect to Plaintiff's claims for retaliation and failure to prevent discrimination and harassment, Defendants assert a need to interpret Article 26, which governs meal and rest periods. Plaintiff avers that she was retaliated against because she

7

complained that she was required to ask permission to use the restroom and wrongly accused of taking breaks longer than ten minutes.[2]  Defendants contend that these allegations demonstrate the necessity of interpreting the terms "breaks" and "promptly," which appear in Article 26.  They do not.  As with her discrimination and failure to accommodate claims, consultation of the CBA may be necessary; it does not follow, however, that interpretation is required.

Plaintiff's claim for intentional infliction of emotional distress also fails to provide a basis for federal question jurisdiction.  This claim appears related to Plaintiff's claim for wrongful termination in violation of public policy.  In her July 21, 2009 DFEH charge, Plaintiff alleges that she was terminated because of her disability.  Because her termination is implicated, Defendants assert the need to interpret Article 6, which requires that employees be terminated only for just cause.  However, the Ninth Circuit has stated "that there is no preemption when 'the tort of wrongful discharge in violation of public policy exists independent [sic] of any contractual right.'"  Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1528 (9th Cir. 1995) (quoting Paige v. Henry J. Kaiser Co., 826 F.2d 857, 863 (9th Cir. 1987)) (alteration in original).  Here, California law defines such a tort, which Plaintiff alleges.  As a defense in state court, Defendants could

---

[2] Plaintiff's complaint is not clear as to whether she complained about these practices and was retaliated against as a result or whether these were the retaliatory acts taken against her.  For the purposes of this motion, this ambiguity is immaterial.

8

assert that they lawfully terminated Plaintiff for just cause. However, on the current record, such a defense does not require an interpretation of Article 6.

Finally, Defendants assert that the CBA's provisions for grievance and arbitration and non-discrimination must be reconciled, citing 14 Penn Plaza v. Pyett, ___ U.S. ___, 129 S. Ct. 1456 (2009). Pyett addressed "whether a provision in a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate claims arising under the Age Discrimination in Employment Act of 1967 (ADEA) is enforceable." Id. at 1460 (internal citation omitted). The Supreme Court answered in the affirmative. Id. at 1474. Here, Defendants do not identify a provision for arbitration that "expressly covers both statutory and contractual discrimination claims." Id. at 1469. Nor do they offer a colorable argument that the CBA clearly and unmistakably required Plaintiff to arbitrate her discrimination claims. Unlike the non-discrimination clause in Pyett,[3] the CBA

---

[3] The relevant clause provided:

§ 30 NO DISCRIMINATION. There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations.

Pyett, 129 S. Ct. at 1460.

1  merely states that any "controversy between the Employer, the
2  Union, or an employee arising out of any matter involving the
3  interpretation of any provisions of this Agreement or any matter
4  involving an alleged violation of any provisions of this Agreement"
5  is subject to the grievance and arbitration process.  Notice of
6  Removal, Ex. C ¶ 7.0.  Although discriminatory conduct would
7  violate the CBA, as noted above, Plaintiff asserts rights provided
8  by the FEHA.  Defendants do not point to a CBA provision that
9  prevents her from doing so.
10     Defendants removed Plaintiff's case at a stage in which her
11 pleadings were not clear concerning the conduct for which she seeks
12 relief.  Unless and until Plaintiff raises issues that necessarily
13 require an interpretation of the CBA, federal question jurisdiction
14 does not lie.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to remand; because Defendants' removal was not frivolous, her request for attorneys' fees under 28 U.S.C. § 1447(c) is DENIED. (Docket No. 11.)

The Clerk shall remand this action to Alameda County Superior Court.  The case management conference, scheduled for September 7, 2010, is VACATED.

IT IS SO ORDERED.

Dated: July 13, 2010

CLAUDIA WILKEN
United States District Judge

10